

UNITED STATES DISTRICT COURT
FILED
SEP 3 0 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM T. GRANT,

           Plaintiff,

      v.

ANTHONY J. ANNUCCI, *et al.*,

           Defendants.

_____

**DECISION AND ORDER**

1:16-CV-00361 EAW

## INTRODUCTION

Plaintiff William T. Grant ("Plaintiff"), a prisoner previously confined at Five Points Correctional Facility ("Five Points"), filed a *pro se* complaint asserting claims under 42 U.S.C. § 1983 against a variety of Five Points staff members based upon alleged events occurring at that facility in 2013. (Dkt. 1). Currently pending before the Court is a motion for summary judgment filed by defendants Anthony J. Annucci ("Annucci"), Lt. Tad Levac ("Levac"), C.O. J. Lalone ("Lalone"), C.O. P. Flora ("Flora"), C.O. R. Maloy ("Maloy"), and Corr. Counselor D. Funke ("Funke") (collectively "Defendants"). (Dkt. 71). For the reasons that follow, the Court grants Defendants' motion in part and denies Defendants' motion in part.

## FACTUAL BACKGROUND

The following facts are taken from Defendants' Statement of Undisputed Facts (Dkt. 71-2), Plaintiff's response thereto (Dkt. 75), and the evidence submitted by the parties. Unless otherwise noted, these facts are undisputed.

At all times relevant to the instant lawsuit, Plaintiff was an inmate in the care and custody of the New York Department of Corrections and Community Supervision ("DOCCS"). (Dkt. 71-2 at ¶ 1; Dkt. 75 at ¶ 1). At all times relevant to the instant lawsuit, Defendants Levac, Lalone, Flora, Maloy, and Funke were employees of DOCCS assigned as staff at Five Points. (Dkt. 71-2 at ¶¶ 2-3; Dkt. 75 at ¶¶ 2-3). Annucci was the Acting Commissioner of DOCCS at the relevant time period. (*See* Dkt. 71-9 at 99).

Plaintiff arrived at Five Points on May 13, 2013, and, while in intake, refused to "double bunk." (Dkt. 71-2 at ¶ 6; Dkt. 75 at ¶ 6). As a result of his refusal, Plaintiff was sent to the special housing unit ("SHU"). (Dkt. 71-2 at ¶ 6; Dkt. 75 at ¶ 6).

Maloy, in the presence of other officers, conducted a strip frisk of Plaintiff for admission to the SHU. (Dkt. 71-2 at ¶ 7; Dkt. 75 at ¶ 7). Flora, in the presence of other officers, then escorted Plaintiff to his newly assigned cell. (Dkt. 71-2 at ¶ 8; Dkt. 75 at ¶ 8). Plaintiff has submitted a sworn declaration in which he claims that on the way to his cell in the SHU, "one of the officers made a statement about setting [him] up to fight." (Dkt. 77 at 1).

Prior to Plaintiff being placed in his cell in the SHU, the other inmate housed in the cell, inmate Buel ("Buel"), was temporarily relocated. (Dkt. 71-2 at ¶ 9; Dkt. 75 at ¶ 9). Plaintiff claims that when his handcuffs were removed, Flora "pulled, twisted, and yanked [his] arm through the feeding hatch." (Dkt. 77 at 1-2). A retention strap was applied and Plaintiff's handcuffs were removed. (Dkt. 71-2 at ¶ 12; Dkt. 75 at ¶ 12).

Buel was returned to the cell. (Dkt. 71-2 at ¶ 13; Dkt. 75 at ¶ 13). Plaintiff testified at his deposition that the corrections officers were standing outside the cell and there was

a "weird energy" from Buel. (Dkt. 71-9 at 118). Plaintiff claims that he asked Buel if the officers were setting them up to fight. (Dkt. 77 at ¶ 10). Plaintiff admitted at his deposition that he was the one who "swung on" Buel, hitting him in the chest with a fist and causing Buel to fall onto the bed. (Dkt. 71-9 at 120-21). Plaintiff continued to hit Buel with closed fist punches, which Buel tried to block. (*Id.* at 122).

Plaintiff and Buel were ordered to stop fighting, though Plaintiff disputes having heard the order. (Dkt. 71-2 at ¶ 16; Dkt. 75 at ¶ 16). Lalone, Maloy, Flora, and non-defendant Officer Dybdhal ("Dybdhal") were ordered to enter the cell and contain the situation. (Dkt. 71-2 at ¶ 17; Dkt. 75 at ¶ 17). An officer entered the cell and pushed Plaintiff off Buel. (Dkt. 77 at ¶ 13). Buel became compliant and Lalone and Dybdhal escorted him from the cell. (Dkt. 71-2 at ¶ 19; Dkt. 75 at ¶ 19).

The parties sharply dispute what happened next. Defendants claim that Plaintiff became combative, and began to swing closed fist punches at Maloy, striking him in the face. (Dkt. 71-2 at ¶ 20). According to Defendants, Flora then shoved Plaintiff in his upper chest towards the bed frame, causing Plaintiff to charge at Flora, who pushed Plaintiff with both hands towards the rear of the cell. (*Id.* at ¶¶ 21-22). Defendants assert that Flora then placed Plaintiff in a "bear hug hold" and forced him to the ground on his back, with Maloy assisting. (*Id.* at ¶ 23). Defendants further assert that Plaintiff continued to be combative and began to spit at the officers, so Flora and Maloy forced Plaintiff onto his stomach and applied restraints, and Lalone applied a spit guard. (*Id.* at ¶¶ 24-30).

Plaintiff denies ever having become combative with the officers. (Dkt. 75 at ¶ 24). He claims that he was knocked to the ground and immediately assaulted by the officers,

and that they beat him and then picked him up and "threw [him] into the wall head first." (*Id.* at ¶¶ 20-21, 23-25). At his deposition, Plaintiff testified that he was flat on the ground after having been pushed off Buel when the officers began to kick him and hit him with batons. (Dkt. 77 at 19-20). Plaintiff further testified that after he was handcuffed, he was placed in a chokehold and repeatedly punched in the face, "maybe 10 to 15 times." (*Id.* at 25, 28). Plaintiff denies having spit at anyone and states that he was punched in the face before the spit guard was applied. (Dkt. 75 at ¶¶ 28-29). Plaintiff testified that after the alleged beating, Flora and Lalone taunted him, and Lalone specifically said that he was the one who punched Plaintiff in the face. (Dkt. 77 at 22-23). Plaintiff further testified that Flora hit Plaintiff with his hands and that Maloy was "there" during the assault but that Plaintiff couldn't say "specifically" what his role had been. (Dkt. 71-9 at 138).

On May 15, 2013, Plaintiff was served with a misbehavior report for, among other things, fighting with another inmate, assaulting an officer, unhygienic acts, creating a disturbance, and disobeying a direct order. (Dkt. 71-2 at ¶ 36; Dkt. 75 at ¶ 36). Funke was chosen as Plaintiff's hearing assistant. (Dkt. 71-2 at ¶ 37; Dkt. 75 at ¶ 37). Plaintiff met with Funke on May 16, 2013, to determine what documents he wanted obtained or which potential witnesses he wanted interviewed. (Dkt. 71-2 at ¶ 38; Dkt. 75 at ¶ 38). Plaintiff requested a copy of the video of the incident, and a request for the video was submitted. (Dkt. 71-2 at ¶ 40; Dkt. 75 at ¶ 40). Plaintiff also requested additional documents, including DOCCS Directive 4933, the Unusual Incident ("UI") Report, the Use of Force Report, interdepartmental memos ("To/Froms"), medical records for the individuals involved in the incident, photographs of the individuals involved in the incident, the DOCCS Rule

Book, and Title 7 of the New York Code of Rules and Regulations ("NYCRR"). (Dkt. 71-2 at ¶ 41; Dkt. 75 at ¶ 41). Funke has sworn under penalty of perjury that he made a request for all these documents (Dkt. 71-2 at ¶ 43), and Plaintiff has admitted that he does not have any personal knowledge as to whether Funke made such a request (Dkt. 75 at ¶ 43).

Non-defendant Cindy Medina ("Medina") has submitted a sworn declaration stating that assistant duties were thereafter transferred to her. (Dkt. 71-8 at ¶ 17). Defendants have submitted an assistance form that appears to have been signed by Medina on May 20, 2013, stating that she met with Plaintiff and informed him that the UI and Use of Force reports, which would in turn contain any relevant To/Froms and photos and medical reports, would be provided to him at his hearing, at the discretion of the hearing officer. (Dkt. 71-9 at 64). The assistance form further reflects that Plaintiff was given a copy of DOCCS Directive 4933 and the DOCCS Rule Book, and informed that the could obtain a copy of Title 7 NYCRR from the law library. (*Id.*). However, the assistance form identifies Funke as Plaintiff's assistant and is unsigned by Plaintiff. (*Id.*). Plaintiff denies having met with Medina and further claims that assistant duties were never transferred to her. (Dkt. 75 at ¶ 45).

Plaintiff's hearing was conducted on May 23, 2013, June 8, 2013, and June 13, 2013, with Levac serving as hearing officer. (Dkt. 71-2 at ¶ 50; Dkt. 75 at ¶ 50). On the first day of the hearing, Plaintiff informed Levac that he had not received all the documents he requested, and so Levac adjourned the hearing until the documents could be obtained. (Dkt. 71-2 at ¶ 52; Dkt. 75 at ¶ 52). Prior to adjournment of the hearing, Plaintiff was

permitted to review a copy of the video footage of the incident.[1]  (Dkt. 71-2 at ¶ 53; Dkt. 75 at ¶ 53).

Prior to the start of the second hearing date, Defendants claim Plaintiff was provided with copies of the Rule Book, DOCCS Directive 4933 (which contains Title 7 NYCRR), the UI Report, and the Use of Force Report (which contains relevant To/Froms, photos, and medical reports).  (Dkt. 71-2 at ¶ 54).  Plaintiff claims that he was given a stack of documents mere minutes before the hearing was recommenced and that he was not permitted time to review them or to marshal a defense before they were taken back.  (Dkt. 77 at ¶ 23).  Plaintiff further claims that prior to the recommencement of the hearing, he and Levac had a conflict wherein Levac called him an "asshole" and told him he was going to give him between three to five years in the SHU, where he hoped Plaintiff would be raped.  (Id. at ¶ 26).  On the record at the second day of the hearing, Plaintiff stated that Levac had told him he was "going to stick [him] in SHU for 3-5 years and all this other stuff" and that Plaintiff had requested someone else be appointed to conduct his hearing; Levac denied making such a statement.  (Dkt. 71-9 at 13-14).

Plaintiff requested four witnesses: Buel, corrections officer Feliciano ("Feliciano"), corrections officer Steward ("Steward"), and the Inspector General.  (Dkt. 71-2 at ¶¶ 62, 66; Dkt. 75 at ¶¶ 62, 66).  Levac permitted Plaintiff to call Buel but denied his request to call Feliciano, Steward, and the Inspector General.  (Dkt. 71-2 at ¶¶ 62, 66; Dkt. 75 at ¶¶ 62, 66).

---

[1]    A copy of this video has not been provided to the Court in support of the instant motion.  Defendants have filed a copy of an audio recording of the incident.

At the end of the disciplinary hearing, Levac read into the record a disposition, in which he found Plaintiff guilty of all charges and imposed a penalty of 24 months in the SHU, as well as loss of recreation, telephone, commissary, phone, and good time for 24 months. (Dkt. 71-9 at 59). The transcript reflects that Plaintiff was present when Levac made the disposition. (*Id.*). Plaintiff claims not to have been present but has failed to produce any evidence to corroborate that claim. Upon review by Five Points Superintendent Michael Sheahan ("Sheahan"), Plaintiff's SHU sentence was reduced to 15 months, with six months suspended, on June 9, 2013. (*Id.* at 80). The disposition was administratively affirmed on September 4, 2013. (*Id.* at 82).

Plaintiff commenced a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules challenging the outcome of the disciplinary hearing. On October 10, 2014, the New York State Supreme Court, Albany County (the "state court"), issued a decision favorable to Plaintiff. (Dkt. 77 at 181-87). In particular, the state court found that Plaintiff had been denied adequate employee assistance in preparing for his hearing, had been provided "at most, 20 minutes to review . . . documents before they were taken away, and he was forced to proceed with the hearing," and had been denied the right to call witnesses (specifically, the Inspector General). (*Id.*).

On December 3, 2014, Donald Venettozzi ("Venettozzi"), DOCCS' Acting Director of Special Housing/Inmate Discipline, issued a memorandum reversing the outcome of Plaintiff's disciplinary hearing and expunging all references thereto. (Dkt. 71-9 at 83-84).

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on May 6, 2016. (Dkt. 1). Defendants filed their Answer to the Complaint on October 17, 2016. (Dkt. 9).

Discovery in this matter closed on February 19, 2018. (Dkt. 62). Defendants filed the instant motion for summary judgment on April 30, 2018. (Dkt. 71). Plaintiff filed his response on July 9, 2018 (Dkt. 75; Dkt. 76; Dkt. 77), and Defendants filed their reply on July 30, 2018 (Dkt. 81). Plaintiff filed a sur-reply on August 24, 2019. (Dkt. 82).[2]

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486

---

[2]    Plaintiff did not seek the Court's leave to file his sur-reply. Whether to permit filing of a sur-reply is "subject to the sound discretion of the court." *Navarrete De Pedrero v. Schweizer Aircraft Corp.*, 635 F. Supp. 2d 251, 258 (W.D.N.Y. 2009). In light of Plaintiff's *pro se* status, the Court has considered his sur-reply notwithstanding his failure to obtain leave to file.

(2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.  Plaintiff's Claims

Plaintiff asserts the following claims: (1) excessive use of force by Flora, Maloy, and Lalone; and (2) denial of the right to due process by Funke, Levac, and Annucci. (*See* Dkt. 1). The Court considers each of these claims below.

## A.    Excessive Use of Force

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009).    In order to prove an Eighth Amendment violation based on an excessive use of force, a plaintiff must demonstrate each of the following two elements by a preponderance of the evidence: (1) the defendant used force against the plaintiff maliciously and sadistically, for the very purpose of causing the plaintiff harm; and (2) the plaintiff suffered some harm as a result of the defendant's use of force.  *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992).

The first element is considered a subjective analysis of the defendant's state of mind at the time of the incident.  This requires a showing that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Goord*, 554 F.3d at 268 (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).  Whether use of force against a prison inmate is unnecessary or wanton depends on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

The objective component considers the "seriousness of the injury." *Id.*  "In the case of excessive use of force by prison guards, the objective component does not require any particular 'quantity of injury,' for '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.'" *Warren v.*

*Purcell*, No. 03 Civ. 8736(GEL), 2004 WL 1970642, at *7 (S.D.N.Y. Sept. 3, 2004) (quoting *Hudson*, 503 U.S. at 9). However, the Eighth Amendment "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (quotation omitted).

Here, the Court easily concludes that there are genuine issues of material fact as to whether Flora, Lalone, and Maloy used excessive force against Plaintiff. Plaintiff has consistently maintained that he immediately became compliant after being pushed off Buel, and that he was nonetheless assaulted. Plaintiff has particularly testified that while he was restrained and compliant, Lalone punched his face repeatedly and Flora hit him. While Lalone and Flora have testified to the contrary, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553-54 (2d Cir. 2005) (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996)).

With respect to Maloy, it is true that Plaintiff was not able to articulate his particular role in the claimed assault. However, Plaintiff was clear that Maloy was present while Lalone put him in a chokehold and repeatedly punched him in the face, notwithstanding the fact that he had been subdued and was in restraints. An individual "is personally involved in the use of excessive force if he either (1) directly participates in an assault; or (2) was present during the assault, but did not intervene on behalf of the victim even though he had a reasonable opportunity to do so," and "[a] plaintiff need not establish who among a group of officers, directly participated in the attack and who failed to intervene." *Corley*

*v. Shahid*, 89 F. Supp. 3d 518, 523 (E.D.N.Y. 2015). Applying this standard, the Court cannot conclude as a matter of law that Maloy was not personally involved in the claimed excessive use of force.

The Court is further not persuaded by Defendants' argument that the officers' actions were a justified attempt to restore prison order, as opposed to a malicious and wanton exercise of force. While it is clear that some initial use of force to separate Plaintiff and Buel was appropriate and warranted, a jury could conclude that after the situation was contained and Plaintiff was restrained, the officers nonetheless continued to hit him. *See Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) ("[D]ismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him. . . ."); *Jeanty v. Cty. of Orange*, 379 F. Supp. 2d 533, 544 (S.D.N.Y. 2005) ("[T]he issue of whether the individual defendants were justified in using force against [the plaintiff] to restrain him after he assaulted [a corrections officer] is analytically distinct from whether they used the appropriate amount of force in doing so, particularly where the plaintiff alleges that the individual defendants continued to beat him after he was subdued, face down on his bed, and even after he was handcuffed and shackled" (quotation omitted) (denying motion for summary judgment on excessive use of force claim)).

For all these reasons, the Court denies Defendants' motion for summary judgment as to Plaintiff's excessive use of force claim against Flora, Maloy, and Lalone.

**B.** **Due Process Claims**

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Although prisoners retain some rights under the due process clause, "those rights are somewhat muted by the institutional concerns inherent in a correctional system." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992).

In raising a due process claim, a plaintiff must first establish that the challenged action infringed a constitutionally protected property or liberty interest. A prison disciplinary hearing implicates a protected liberty interest if it "imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Here, Defendants have not disputed that Plaintiff's 15-month SHU sentence satisfies this standard.

Second, a plaintiff must show that he was deprived of the protected liberty interest without due process. *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998). It is well-established that inmates have the right not to be deprived of a liberty interest without due process, and that inmates have due process rights in prison disciplinary hearings. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). However, "[p]rison inmates charged with disciplinary violations do not have 'the full panoply of rights' afforded to a defendant in a criminal prosecution." *Galan v. Laird*, No. 08-cv-267 (NG), 2010 WL 3780175, at *1 (E.D.N.Y. Sept. 21, 2010) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). To comply with procedural due process, prison authorities must provide an inmate charged

with a violation in a disciplinary hearing with: "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Id.* (quoting *Sira*, 380 F.3d at 69). The requirements of due process are satisfied if "some evidence" supports the conclusion of the disciplinary hearing. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985).

### 1.    Claims as to Inmate Assistance

Plaintiff claims Funke did not provide him with adequate inmate assistance in connection with his disciplinary rehearing. Although inmates are not entitled to retained or appointed counsel in prison disciplinary hearings, "[p]rison authorities have a constitutional obligation to provide assistance to an inmate in marshaling evidence and presenting a defense when he is faced with disciplinary charges." *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1998). New York's regulations allow for an employee assistant to help a prisoner in preparing for a disciplinary hearing. *See* 7 N.Y.C.R.R. §§ 251-4.1, 251-4.2. The Second Circuit has also "provide[d] for an inmate to receive employee assistance when that inmate is charged with an offense warranting SHU confinement." *Sloane v. Borawski*, 64 F. Supp. 3d 473, 485 (W.D.N.Y. 2014) (citing *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993)). The assistant "must be assigned to the inmate to act as his *surrogate*— to do what the inmate would have done were he able." *Silva*, 992 F.2d at 22. "The assistant is not obliged to go beyond the specific instructions of the inmate because if he did so he would then be acting as counsel in a prison disciplinary proceeding, assistance to which a

prisoner is not entitled." *Id.* The inmate assistant's role is to interview witnesses and report the results of his efforts to the inmate, and to assist the inmate in obtaining documentary evidence or written statements which may be necessary. *See* 7 N.Y.C.R.R. § 251-4.2. "[A]n assigned assistant who does nothing to assist an inmate 'has failed to accord the prisoner his limited constitutional due process right of assistance.'" *Gates v. Selsky*, No. 02 CV 496, 2005 WL 2136914, at *6 (W.D.N.Y. Sept. 2, 2005) (citing *Eng*, 858 F.2d at 898).

Here, the Court finds there are genuine issues of material fact as to whether Funke provided Plaintiff with adequate assistance. Of particular importance in the Court's assessment of this claim is the state court's determination, in Plaintiff's Article 78 proceeding, that Plaintiff was denied adequate employee assistance. (*See* Dkt. 77 at 184-85). A state court's determination in this regard is "persuasive evidence of defendants' failure to provide plaintiff with meaningful assistance to prepare his defense to the charges against him." *Lee v. Coughlin*, 902 F. Supp. 424, 433 (S.D.N.Y. 1995). Moreover, as the state court noted, there is no evidence in the record of any meaningful effort to obtain the documents requested by Plaintiff prior to the hearing, and it is not clear from the record whether in fact all the requested documents were provided at the hearing, which precludes any finding that the hearing officer cured the defect in assistance. (*See* Dkt. 77 at 184-85).

The Court further finds that there are genuine issues of material fact as to whether and when Medina took over assistant duties from Funke. The assistance form that Defendants rely on in this regard is thoroughly inconclusive, inasmuch as it states that Funke is the assigned assistant, but appears to be signed by Medina. (Dkt. 71-9 at 64).

Moreover, at the hearing, Levac stated that Plaintiff was assisted by Funke, with no mention of Medina. (*Id.* at 5). Medina and Funke have both acknowledged that they have no personal recollection of Plaintiff or his claims. (Dkt. 71-4 at ¶ 6; Dkt. 71-8 at ¶ 6). On this record, the Court cannot resolve the veracity of Plaintiff's claim that Funke served as his assistant throughout the process. Accordingly, Defendants' request for summary judgment on Plaintiff's due process claim against Funke is denied.

### 2.   Claims as to Disciplinary Hearing

Plaintiff also claims that his due process rights were violated during his disciplinary hearing because Levac was biased against him, failed to afford him sufficient time to review the provided documents, failed to call his requested witnesses, and issued a determination outside Plaintiff's presence. The Court considers each of these claims below.

#### a.   Bias

An inmate has a due process right to "a fair and impartial hearing officer." *Sira*, 380 F.3d at 69. "Although a hearing officer's impartiality does not have to mirror that of judges generally, the result of a disciplinary hearing cannot be arbitrarily and adversely predetermined." *Smith v. United States*, No. 9:09-CV-729 (TJM/DRH), 2011 WL 777969, at *9 (N.D.N.Y. Feb. 3, 2011) (quotation omitted), *adopted*, 2011 WL 776150 (N.D.N.Y. Mar. 1, 2011).

Here, Plaintiff claims that Levac stated before any evidence was heard that he was going to send Plaintiff to the SHU for three to five years. On a motion for summary judgment, the Court must assume that Plaintiff's testimony in this regard is true, and there

is accordingly a "triable issue of fact" as to whether Levac was fair and impartial. *See id.* (denying summary judgment motion where the plaintiff claimed that hearing officer had stated that he had to find Plaintiff guilty of something, despite hearing officer "vehemently den[ying] ever making such a statement").

### b. Denial of Adequate Time to Review Documents

"An inmate who was . . . denied access to documentary evidence at a disciplinary hearing may . . . be entitled to relief." *Watson v. Annucci*, No. 9:14-cv-00638-JKS, 2015 WL 5971077, at *6 (N.D.N.Y. Oct. 14, 2015). In particular, "[a]lthough the right to documentary evidence can give way to legitimate concerns over institutional safety, an inmate is still entitled to some explanation of the basis for a hearing officer's denial of the inmate's request for items of evidence." *Id.* (quotation and original alterations omitted).

Here, there are genuine issues of material fact as to whether Levac improperly denied Plaintiff access to documentary evidence. As the state court noted, the record amply supports the conclusion that Plaintiff was given a stack of papers prior to recommencement of his hearing and provided at most only 20 minutes to review them before they were taken away again. (*See* Dkt. 77 at 185). Moreover, it is not even clear from the record what precisely was included in that stack of papers, nor did Levac explain why Plaintiff was given only 20 minutes to review it. On this record, a reasonable juror could find that Levac unreasonably denied Plaintiff the opportunity to review the documents.

### c. Failure to Call Witnesses

As already noted, an inmate has a right to call witnesses on his own behalf as part of a disciplinary hearing. However, "a prisoner's request for a witness can be denied on

the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991). "The burden is on the prison official to show the rationality of declining to call a witness." *Gonzalez v. Chalk*, No. 13 C. 5486 (PKC), 2014 WL 1316557, at *5 (S.D.N.Y. Apr. 1, 2014) (quotation omitted).

Here, Defendants acknowledge that Levac refused to call three of the four witnesses requested by Plaintiff. (*See* Dkt. 71-2 at ¶¶ 66-69). The state court specifically found that Levac violated Plaintiff's rights by refusing to call the Inspector General, because the Inspector General was investigating the matter and could have provided relevant testimony, and Levac "failed to state a good faith basis for the denial of [Plaintiff's] request" for the Inspector General's testimony. (Dkt. 77 at 186). The Court is similarly persuaded that, on the instant record, a rational juror could conclude that Levac failed to provide a rational, good faith basis for refusing to call the Inspector General, and accordingly denies Defendants' request for summary judgment as to this aspect of Plaintiff's due process claim.

### d.      Rendering Decision Outside Plaintiff's Presence

The Court grants Defendants' motion for summary judgment to the extent Plaintiff asserts a due process violation based on Levac having rendered a decision outside his presence. The transcript of the hearing indicates that Plaintiff was present when the disposition was rendered (Dkt. 71-9 at 59), Levac has stated under penalty of perjury that Plaintiff was present when Levac read the disposition (Dkt. 71-6 at ¶ 33), and, importantly, Plaintiff's own exhibits confirm that he received a written copy of the disposition (Dkt. 77 at 149). Plaintiff has failed to produce any evidence corroborating his claim that he was

not present for the disposition of his disciplinary proceeding. *See Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." (quotation omitted)). Thus, assuming Plaintiff had a right to be present when the disposition was announced, *see Vogelfang v. Capra*, 889 F. Supp. 2d 489, 513 (S.D.N.Y. 2012) ("District courts in this circuit have expressed differing views as to whether an inmate has a due process right to be present at a disciplinary proceeding separate and apart from the well-established rights of inmates to call witnesses and present documentary evidence."), that right was satisfied.

## C.   Claims Against Annucci

Defendants seek summary judgment on Plaintiff's claims against Annucci, arguing that there is no evidence Annucci was personally involved in any claimed deprivation of Plaintiff's rights.

"To recover damages against supervisory officials for the acts of their subordinates, a plaintiff must show that the defendant's personal involvement caused the constitutional deprivation." *Beatty v. Davidson*, 713 F. Supp. 2d 167, 176 (W.D.N.Y. 2010). Here, the Court agrees with Defendants that there is no evidence that Annucci was personally involved in the alleged denial of due process.

Plaintiff makes two arguments with respect to Annucci's alleged involvement. First, he claims that Annucci was informed of the violations but refused to remedy the wrong. (Dkt. 76 at 11). However, the record does not support this conclusion. While Plaintiff did send a letter of appeal addressed to "Commissioner, N.Y.S. D.O.C.C.S."

detailing his claims (*see* Dkt. 77 at 151), his letter of appeal was considered and decided by Albert Prack, DOCCS' Director of Special Housing/Inmate Disciplinary Program (*id.* at 163). "A supervisory official is not deemed to have been personally involved solely by virtue of having received a letter or complaint from a prisoner and having referred it to the appropriate department for investigation[.]" *Phillip v. Schriro*, No. 12-cv-8349-RA, 2014 WL 4184816, at *5 (S.D.N.Y. Aug. 22, 2014).

Second, Plaintiff claims that Annucci failed to follow the state court's order to reverse the disposition, expunge all references from Plaintiff's record, and remove all associated sanctions. (Dkt. 76 at 11). Again, the record does not demonstrate that Annucci had any personal involvement in the follow up from the state court's order. Instead, it was Venettozzi who was apparently responsible for implementing the state court's order. (Dkt. 71-9 at 83-84). On these facts, no rational juror could conclude that Annucci was personally involved in depriving Plaintiff of his right to due process.

### D.   <u>Qualified Immunity</u>

Finally, Defendants argue that they are entitled to qualified immunity. "Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018).

- 20 -

Here, Defendants' qualified immunity argument must fail, because it relies upon accepting Defendants' version of the disputed facts. In particular, Defendants' qualified immunity argument is premised on their contention that Flora, Lalone, and Maloy were responding to Plaintiff's "continued volatile and combative behavior," that Funke was no longer serving as inmate assistant, and that the Inspector General lacked relevant information. (*See* Dkt. 71-1 at 24). However, as the Court has discussed at length above, those facts are in dispute, and must be resolved by a jury. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("In resolving questions of qualified immunity at summary judgment," the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment."). Accordingly, the Court denies Defendants' request for summary judgment based on qualified immunity.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment (Dkt. 71) in part and denies it in part. In particular, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's due process claim against Levac solely to the extent it is based on having allegedly announced the disposition of the disciplinary hearing outside Plaintiff's presence, and with respect to Plaintiff's claims against Annucci. The Court denies the motion in all other respects. The Clerk of Court is directed to enter judgment in favor of Anthony J. Annucci and to terminate him as a defendant.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:  September 30, 2019
        Rochester, New York